**RILEY, Admr., Plaintiff-Appellee, v. KEEL, et, Defendants-Appellants, Defendants-Appellees.**

Ohio Appeals, First District, Hamilton County.

No. 6723.   Decided December 9, 1946.

258

Alfred T. Fulford, Cincinnati, for Thomas A. Riley, Administrator.

Robert F. Dreidame, Cincinnati, for Nellie H. Hancock et al., defendants-appellants.

Frank A. Roberts, Steubenville, for Clara Reed, et al., defendants-appellants.

Edward Holz, Jr., for Eugene Fischer, defendant-appellant.
Gus W. Byttner, Dayton, for Estate of Anna Reininger, deceased, defendant-appellant.

## OPINION

By ROSS, J.:

This is an appeal upon questions of law from a judgment of the Probate Court of Hamilton County, Ohio.

The proceeding as originally presented to the trial court was one to determine heirship. The controversy involved in such initial presentation was fully determined apparently to the satisfaction of all parties concerned, as no question in reference thereto is here presented by the appeal.

The matter as presented on this appeal concerns certain findings and adjudications of the trial court with reference to the relation of the identical assets which became the property of decedent by devise from her deceased husband and other assets which she acquired otherwise.

The assignments of error involve three conclusions of the trial court upon such relation.

The first deals with the distribution of certain building association certificates which were adjudged to be included in the "separate" estate of the decedent, as distinguished from assets held to be "identical" with assets devised by the deceased husband of decedent to her, and were held not to have descended under the provisions of §10503-5 GC.

In the interest of brevity, assets of the estate claimed to be included and subject to the provisions of §10503-5 GC, the so-called "half and half" section will be referred to as "identical" assets and those claimed to be not so subject to such section will be referred to as "separate" assets.

It appears that such building association certificates were issued in the names of decedent and her husband but under a definite contract providing for joint and survivorship ownership of the certificates and the deposits evidenced thereby. When the husband of decedent died such certificates and such deposits became the property of the decedent under such contract and should never have been included as assets in the estate of decedent's deceased husband.

The decedent was the executrix of her deceased husband and for some reason not apparent did include these certificates as assets of his estate.

The ensuing incidents in the administration of the deceased husband's estate with reference to these certificates, might, therefore, be disregarded as far as affecting the question of

whether or not such certificates and deposits were "identical" or "separate" assets in the decedent's estate. However, in the administration of the estate of the deceased husband, an order was made for distribution in kind to the decedent.

The decedent endorsed the certificates as executrix, surrendered them to the Building Association and received a check in full of the deposits, evidenced by such certificates, payable to her as executrix. The next day the decedent endorsed the check as executrix, surrendered same to the building association, and, upon signing a subscription, was issued new certificates in her own individual name.

Neither the fact that through mistake the original certificates were included in the estate of the deceased husband of decedent, nor the fact that, as executrix, she treated same as part of his estate, nor the fact that an order of distribution in kind was made to her, nor the fact that she endorsed the certificates as executrix, nor the fact that she hurriedly had them issued in her own name after they were cashed by a check to her as executrix, can weigh against the two outstanding facts—(1) that such certificates and the deposits represented thereby were never legally or properly a part of her husband's estate, but, on the contrary, by virtue of survivorship, belonged entirely to her upon her husband's death; and (2) that such certificates completely lost their identity, in that they were cancelled and the deposits represented thereby paid by a check to the decedent as executrix, and entirely new, separate, and entirely different certificates issued to her in her own individual name upon her subscription for such certificates.

The trial court committed no error in its conclusion upon the lack of "identity" of building association certificates involved in this first assignment of error, and in holding such new certificates and the deposits evidenced thereby to be a part of the "separate" assets of decedent's estate.

The second assignment of error involves an order of the trial court charging "identical" assets in decedent's estate (not included with that involved in the first assignment of error) with an amount equivalent to a sum waived by decedent as a claim against the estate of her deceased husband.

It appears that in the administration of her husband's estate, the decedent was entitled to the sum of $4786.00, the equivalent of exempt property and widow's allowance.

It also appears that if the widow had insisted upon the payment of such sum in cash, she as executrix, would have been required to sell some of the "identical" property now appear-

ing in her estate. Instead of insisting upon such claim, she advanced the sum of $4461.83 to the estate, and waived any personal claim against the estate of her deceased husband by reason of such advancement, thus freeing the "identical" property, now under consideration, from the necessity of sale. The trial court states in his opinion:—"It cannot be said, therefore, that the whole value of this identical property came to her from her deceased husband, and such identical property should stand charged with $4461.83. In other words, $4461.83, as represented in the certificates of stock was her own money." The rationale of this conclusion is that by reason of the advancement the "identical" assets were reduced to the extent of the advancement and to that extent such advancement was the equivalent of exempt property and widow's allowance.

While the justice involved in the premises for this conclusion is apparent, the result does too great violence to the law governing the administration of estates.

The widow was entitled to her allowance. Either she, in effect, waived them, which she could do, or waived the advancement she made, in order that they might be paid to her.

The estate is closed. To ignore the waiver of the widow from either aspect is to permit the assertion of a claim against an estate long after a final account has been approved and the estate closed.

The effect of such conclusion is to now, long after such estate has been finally closed, permit a disclaimer of a waiver, thus ignoring the statutory limitations governing the administration of estates. No authority for such action is found.

The widow must be presumed to have known the effect upon the "identical" property, when, in preference to selling same, she advanced sufficient funds to satisfy her personal claim against the estate of her deceased husband.

The trial court erred, therefore, in charging the "identical" assets with such claim of the "separate" assets.

The third assignment of error deals with the conclusion of the trial court that certain claims against the estate of the decedent should be charged upon a pro rata basis against the "identical" assets.

The trial court in its order adjudged that "all debts other than **funeral expenses** are to be chargeable against this net identical property sum in the same proportion that that sum bears to the total amount of assets in the estate of Adeline L. Feucht." (Emphasis ours.)

When the decedent died, she left certain assets constituting her estate. All of such assets were her property at the time of her death, whether they were "identical" assets or "separate" assets. She also, at the time of her death, was indebted for certain sums of money and upon her death her estate became charged with certain obligations incident to her burial and the administration of her estate. Now all of this indebtedness was indebtedness of her estate just as all the assets were assets of her estate. How such assets should be distributed after the payment of the debts of her estate is a matter not involved in the payment of such debts against the estate. All the assets are responsible for all the debts.

The effect of the order of the trial court is to throw the burden of the funeral expenses entirely upon the "separate" assets; all of the debts being pro-rated.

No complaint by any appellant is made as to this order as far as it affects payment of funeral expenses and it will not be disturbed, although it is considered erroneous, regardless of anything that may appear in the opinion in **Linton v. Williams, 25 Abs, 659.** An examination of that case indicates the existence of factors not involved in the instant consideration. The estate administered was under **testate** disposition.

The testator devised the residuum of the estate in the Linton v. Williams case to "descend to and be distributed to such person and persons as would receive the same were I to die without will; * * *" While the statutes providing for intestate disposition were **adopted** by the testator as the terms of her devise and bequest of such residuum, still the recipients of her devise and bequest took by virtue of her will as fully as though she had in her will made the specific disposition provided by law.

The conclusion of the Court upon the matter of payment of debts it would seem, therefore, should have been reached without regard to any application of the provisions of §10503-5 GC. There appears no reason for the conclusion of the Court upon such subject.

**Sec. 10509-121 GC,** provides:

"Every executor or administrator shall proceed with diligence to pay the debts of the deceased, and shall apply the assets in the following order:

"1. Costs and expenses of administration.

"2. Bill of funeral director not exceeding three hundred and fifty dollars, such funeral expenses other than the bill of the funeral director as are approved by the court.

"3. The allowance made to the widow and children for their support for twelve months.

"4. Debts entitled to preference under the laws of the United States.

"5. Expenses of the last sickness of the decedent.

"6. Personal property taxes and obligations for which the decedent was personally liable to the State of Ohio or any subdivision thereof.

"7. Debts for manual labor performed for the deceased within twelve months preceding decedent's death, not exceeding one hundrd and fifty dollars to any one person.

"8. Other debts as to which claims have been presented within four months after the appointment of the executor or administrator.

"9. All other debts for which claims have been presented according to law after four months from the appointment of the executor or administrator.

"* * *"

As to the instant questions, §§10503-5 and 10509-121 GC, are to be read in pari materia, and there is no provision in the latter section indicating that by reason of the provisions of §10503-5 GC, there is to be any special allocation of debts of any nature to any particular type of assets. Nor is there anything in the former indicating that the provisions of the latter are to be ignored.

The vesting of the estate, provided for in §10503-5 GC, has no effect upon the duty of the decedent's representative to pay debts. There is no provision in such latter section indicating that the vesting therein provided takes precedence over the provisions of §10509-121 GC. It is well understood that the vesting of any inheritance, or any devise or bequest is subject to the provisions requiring that all debts of the decedent's estate shall first be paid. There appears, therefore, no reason to apply different rules for different types of debts, except as to the priority provided in §10509-121 GC. See, also: §§10504-75, 10504-77 GC.

Sec. 10503-5 GC, deals with the vesting of the net estate. As said before the "identical" assets are just as much a part of the decedent's estate as the "separate" assets. The "identical" assets are not impressed with any lien, simply because of their origin, nor do they bypass the decedent as a vehicle through whom they descend to the recipients provided by law. Under the decision of the trial court, as incorporated in the judgment entry—the "separate" assets in the estate were charged with the entire funeral bill; the costs of administra-

tion, including court costs, attorney's and administrator's fees were charged against the entire estate, proportioned to the relation of "identical" assets to "separate" assets. The state inheritance tax was charged against those succeeding to the particular assets and charged against the particular type of assets in the proportion such succession was composed of "identical" or "separate" assets.

General debts were charged proportionately against both types of assets.

Now the only debt charges involved in this assignment of error are those which the court found to be a proportionate charge against the "identical" assets. As has been stated, such charge conforms to the conception of the applicable law adopted herein. No reversible error, therefore, intervened.

Those interested in the "separate" assets have not appealed from a ruling which is herein considered erroneous, in that the "separate" assets are unduly burdened with a debt charge not warranted by applicable law. A judgment of this Court in conformity with this opinion is, therefore, not in conflict with the judgment of the Judges of the Second District, even if such judgment may be considered adverse, and no certification is, therefore, required.

The trial court, however, having committed error in the matter involved in the second assignment of error, the judgment is modified to the extent of freeing the "identical" assets from the claim of the "separate" assets, based upon the claim of the decedent for advancement to the estate of her deceased husband. As so modified, the judgment of the Probate Court is affirmed.

HILDEBRANT, PJ, MATTHEWS & ROSS, JJ, concur in syllabus, opinion & judgment.